Ephraim Beardsley *vs.* John Knight.

Franklin, January, 1832.

It is a question of law for the court to decide what constitutes a seal; but it is for the jury to determine whether that, which the court adjudges to be a seal, has been affixed to an instrument.

A seal, such as is required to a deed conveying land, must be of wax or wafer, or some adhesive substance which is capable of receiving an impression.

A new trial will not be granted to a party plaintiff on account of the court's having improperly rejected testimony, when it is evident that, in case of a recovery, judgement must be arrested for the insufficiency of the declaration.

One cannot, merely by entering into possession of land, and claiming it as his own, avail himself of the covenants in a deed of conveyance of the premises previously executed by the covenantor to an intervenient possessor.

Where one sues for a breach of covenants running with the land, he must prove a legal assignment to himself, by the covenantee or his assignee, by deed of warranty, having all the requisites of a deed of conveyance, and on failing to prove such assignment or conveyance, all other evidence is irrelevant, and must be rejected.

This was an action of *covenant*, and the declaration contained two counts. The first alleged that the defendant and one Elijah Hyde, deceased, on the 3d day of March, 1808, for the consideration of eighteen hundred dollars, by deed of that date, duly executed, acknowledged and recorded, according to law, conveyed to Ebenezer Hatch, his heirs and assigns, the undivided half of a certain piece or farm of land, lying in the town and county of Grand-Isle, to wit, the first division lots drawn to the rights of Thomas Tolman, Samuel Herrick, and John Wood ; and that the said *Knight* and Hyde, in and by said deed, covenanted to and with the said Hatch, his heirs and assigns, that they would warrant and defend the premises against all lawful claims and demands whatsoever ;—that afterwards Hatch by deed dated November 20, 1812, for a valuable consideration, quit-claimed the south half of said premises to the plaintiff, including the south part of the aforesaid lot drawn to the right of John Wood ; by virtue of which the plaintiff entered into possession, and became seized and possessed of the premises, as assignee of the said Hatch ;—that Reuben Clapp, administrator of one Alexander Gordon, afterwards, on the 26th day of January, 1822, sued out a writ of ejectment against the plaintiff, demanding the seizin and possession of thirty six acres of the east corner of said lot, drawn to the right of John Wood ; and such proceedings were had in said action, that in January, 1828, the said Clapp recovered judgement in said action against said *Beardsley* for the seizin and possession of the premises demanded, with one cent damages, and his cost, taxed at $112,52 ; and afterwards took out a writ of possession, and by virtue thereof he entered upon, and took posses-

Franklin,
January,
1832.

Beardsley
vs.
Knight.

sion of, the demanded premises, and dispossessed said *Beardsley* of the same ; and averring that the title on which the said Clapp recovered was elder and better than the title derived from said Knight and Hyde by said Hatch, and independent of the same.

In the second count the conveyance by Knight and Hyde to Hatch, was set out as in the first. It was then alleged that, on the 8th day of July, 1807, Knight and Hyde conveyed the undivided half of the premises, to the plaintiff, by virtue of which conveyance the plaintiff entered into possession ; and after the execution of the deed by Knight and Hyde to Hatch, as before mentioned, Hatch also went into possession of an undivided half of the premises ; whereby the plaintiff and Hatch were seized as tenants in common, and so continued, until the 20th day of November, 1812, when they made partition of the premises, by which the plaintiff became seized and possessed of the south half thereof in severalty, and of thirty six acres on the south part of the lot drawn to the right of John Wood, and so continued seized and possessed, until the eviction by Clapp, as mentioned in the first count.

The plaintiff claimed to recover of the defendant the value of the thirty six acres from which he had been evicted by Clapp, and all the cost and charges to which he had been subjected in defending the said action of ejectment.

The defendant pleaded that he had kept and performed his covenants according to the form and effect of the said indenture of said covenant. On which plea, issue was joined. On the trial in the county court, the plaintiff insisted the burden of proof lay on the defendant to make good his plea. But the court decided that the plea was a general denial of all the material allegations in the declaration, and put the plaintiff on proof of every material fact alleged. The plaintiff then offered in evidence the deed set forth in his declaration from Knight to Hatch, which was read without objection ; and the deed from Hatch to himself, dated the 20th of November, A. D. 1812, acknowledged on the same day, and recorded on the 9th day of October, 1813. This deed had no seal affixed to the signature of the grantor, excepting a scroll or circle made with a pen, and the word "seal" written within it. The defendant objected to its admission, and insisted that it was not sealed, and, therefore, could not be given in evidence to the jury. The plaintiff insisted that it was sealed, and offered, in connexion with it, parol evidence to prove, that he went into possession of the premises therein described, under it, in 1812, and continued in possession under it till 1829, when he was evicted as set forth

in his declaration, and that whether the deed was sealed or not, was a question of fact for the jury. The court determined that the deed was not sealed, and that whether it was sealed or not, was a question of law for the court to try, and not the jury ; and, therefore, excluded it. The plaintiff then offered a quit-claim deed from Knight and Hyde to himself, dated in 1807, of one equal undivided half of the same premises included in the deed from Knight and Hyde to Hatch ; and tendered evidence to prove that the plaintiff, under his deed from Knight and Hyde, and Hatch, under his deed from the same, occupied said premises from 1807 to 1812, as tenants in common ; that in 1812, Hatch and the plaintiff made a division of the premises, and continued ever after to occupy and enjoy the same in severalty under said division ; that by said division the land mentioned in the declaration was set apart to the plaintiff ; and that he held and occupied the premises as his own, under said division, from 1812 till the time of the eviction, mentioned in the declaration. Which deed and parol evidence were objected to, and excluded by the court, who directed the jury to return a verdict for the defendant ; which they accordingly did. To the several decisions of the court the plaintiff excepted, and the cause was ordered to the Supreme Court.

*Smalley and Adams, for plaintiff.*—The first question in this case is, what is in issue by the pleadings ?

The declaration sets forth the defendant's covenants with Hatch, and the plaintiff's right to them in the character of assignee of Hatch, and then alleges a special breach by ouster, by title elder and paramount to defendant's. To this defendant pleads that he has *kept* and performed his covenants ; and on this plea issue is joined. The decision of the county court that this plea was in the nature of a general issue to the whole declaration, was erroneous.

The language of the plea is to be taken most strongly against the party pleading ; and it is a universal rule of pleading, that whatever is traversable, and not traversed by the adverse party, is admitted. Now this plea does not expressly deny any fact set forth in the declaration. By it the defendant undertakes to show affirmatively that he has *kept* and performed his covenants ; and it would be a strange perversion of all the logic of pleading, as well as repugnant to common sense, to say, that the defendant had *kept* and performed his covenants, because he denied their existence and the assumed character of the plaintiff. This plea cannot be

FRANKLIN,
*January,*
1832.

Beardsley
*vs.*
Knight.

FRANKLIN,
January;
1832.

Beardsley
vs.
Knight.

made good but by showing that the defendant's title conveyed to Hatch was elder and better than that by which the plaintiff was evicted. This is the only point in issue, consistent with the established rules of pleading. It is no answer to say that the plaintiff could not show a breach of the covenant, without establishing his right as assignee to the premises from which he was ousted. This is a mere *petitio principii*, assuming the very point in controversy. The question is, whether the plaintiff's character, as assignee, is admitted or denied by the plea ; not what the plaintiff, under another state of the pleadings, *might* be compelled to prove to make his case. The plaintiff insists, that the plea admits the making of the covenants, and impliedly his right to sue for their breach, but argumentatively denies the eviction by title paramount. This interpretation restricts the plea to a single point, and renders its language consistent with the general canons of pleading and the adjudged cases.—*Comyn's Dig. Pleader C*, 49, *E*, 26 ; *Archbold's Pleadings*, 191–2, 237, 239, 275–9, 280 ; 7 *Petersdorf*, 400 ; *Hodgson* vs. *E. In. Co.* 7 *T. R.* 278 ; *Corsbie* vs. *Oliver*, 2 *C, L. R.* 303 ; 1 *Tidd's P.* 593 ; *Roosevelt* vs. *Heirs of Fulton*, 7 *Cowen*, 71, and authorities there cited ; *Stephen on Pleading*, 157, *et sequente passim, Rules of pleading*.

II. Was the deed from Hatch to plaintiff *sealed ?* And 1st. This is a question of fact which should have been submitted to the jury under the direction of the court. Generally, whether a deed or other instrument offered, is genuine, is a question for the jury. This proposition is too well established to admit illustration as it respects signature.—2 *Coke Lit.* 232. 2nd. If the question must be tried by the court alone, it is submitted, that the deed from Hatch to the plaintiff was sealed. The primitive use and purpose of the seal have long since ceased ; and affixing it to an instrument can now only be considered a mere formal ceremony. Originally it appears to have been used as a substitute for writing, and for the purpose of identifying the party by an appropriate sign. It was not generally, in the early periods of its use, impressed upon the instrument or upon wax or other substance, but was attached to a label of parchment, or a silk string, fastened at the bottom of the instrument which it was intended to authenticate.— 2 *Evans' Poth.* 18 ; 2 *B. C.* 305 ; *Jacob's Dic. Seal* ; *Crabb's History of E. L.* 92. In the reign of Edward I. every person of note had *his seal*, or, more properly speaking, instrument, with which he probably impressed upon wax or other substance the figure or character to which he was en-

## OF THE STATE OF VERMONT.

titled, and by which he was known.  Hence the question so of- FRANKLIN,<br>*January,*<br>1832.
ten agitated in the ancient books, whether a man could seal with
a stranger's seal, and whether several obligors could bind them- Beardsley<br>*vs.*<br>Knight.
selves by making several impressions upon the same piece of wax.
As late as 29th *Eliz.* this seems to have been *vexata questio;*
and it was held in the exchequer, that several could not seal on
one piece of wax, but there must be several pieces.  In all the
discussions on this subject in the ancient books, it seems to be as-
sumed that the act of sealing was performed by an instrument
with which the obligor stamped or imprinted his peculiar sign.
But none of the old books contain any adjudication or discussion
upon the precise point of what material the seal should be com-
posed.  The discussion would seem to be frivolous and imperti-
nent ; for it can hardly be supposed the law ever ordained that
a person should authenticate an act by performing certain ceremo-
nies, and by using a certain specific material substance, without
which, let his intention be ever so manifest, the deed should be
invalid : neither the ancient nor modern authorities warrant such
an inference.  The history of this mode of authentication shows
that it has been gradually and imperceptibly modified by fashion
and the character of the periods in which it has been used.  Before
the knowledge of letters and the art of writing became so general-
ly diffused, affixing a seal to an instrument was undoubtedly a
solemn act performed with proper ceremony.  But it never was
considered more than evidence of intention, and in modern
times it has dwindled into secondary evidence.  Thus it was held
in a modern case " that the putting of a seal opposite the name,
" notwithstanding it was evidence of a deed, and one of the for-
" malities attending it, was not to be taken as conclusive evidence,
" provided the intention of the parties was not to contract by
" deed."  The law says that a conveyance of land to be valid
shall be *signed* and *sealed,* but has not declared of what material
the seal should be composed, and the only knowledge we have of
its composition is historic.  At different times different materials
have been used in its composition, and different ceremonies per-
formed in the act of prefixing it, which tradition, practice, and the
double import of the term seal sufficiently prove.  Modern wri-
ters of reputation lay it down as universally conceded, that, " to
" constitute sealing, the use of wax or wafer is not essential.
" It is sufficient if the *seal,* stick, or other instrument, be impressed
" by the party on the plain paper or parchment with an intention to
" seal."  In conformity with this description of a seal have been the

FRANKLIN,
January,
1832.

Beardsley
vs.
Knight.

adjudications and practice in most of the states throughout the union. This interpretation of *sealing*, though not perhaps strictly accordant with ancient practice, is perfectly consistent with the fact, that it has become secondary to signing, and but a mere ceremony. The deed under consideration appears to have been executed by the parties having the same idea of a seal which is entertained by the most enlightened tribunals and approved legal writers of the day. The grantor, Hatch, at the time of the execution of this instrument, affixed to it what he called his seal, and acknowledged it to be his *deed* : the plaintiff received it as such, and it remains to be seen whether the law will give effect to this acknowledged and declared intention of the parties.—*2 B. C.* 306, *citing Stat.* 14, *E.* 1 ; *Church* vs. *G* 5 *Esp.* 83 ; *Comp. Stat.* 167 ; *Math. P. E.* 39 ; *Shep. Touch.* 57 ; *Atherly's notes*; *Sugden on Powers,* 236 ; 2 *Evans' Poth.* 143-44 ; *U. S.* vs. *Caffin, Br. Rep.* 140 ; *Cox Dig.* 608 ; 4 *Cruise's Dig. T.* 33, *C.* 2, *s.* 72.

III. From the fact of 17 years possession, the jury ought to have presumed that it was duly executed.—*Sumner* vs. *Child,* 2 *Con.* 610 ; *Brown* vs. *Woodbeck,* 2 *Con.* 27 ; *Gray* vs. *Gardner,* 3 *Mass.* 399 ; 1 *Swift's Dig.* ; *Saunders P. & E.* 282 ; *Math. P. E.* 6, 10, 11, 14, 37, 38.

IV. Admitting the deed to be defective, still, as the plaintiff has acquired the land, he has acquired the covenants, which run with the land. The covenant of warranty runs with the land to heirs and purchasers.—4 *Cruise's, Dig. T.* 32, *c.* 25, *s.* 26, 22, 67 ; *Spicer's case, Coke abr.* 135.

V. The evidence offered by the plaintiff was pertinent to the issue upon the second count, and ought not to have been rejected. If the count does not set forth a good title in the plaintiff it should have been objected to by demurrer.

*Mr. Allen, for the defendant.*—The question is, whether the deed of Ebenezer Hatch to the plaintiff is void for want of a seal, there being, in place of a seal, merely a scroll, with the word "seal" inscribed. Defendant contends there is no seal, and the deed is, therefore, void. The seal required by the common law is defined by *Lord Coke,* (3 *Inst.* 169) to be " *cera impressa, quia cera sine impressione non est sigillum.*" In all the eastern states the waxen seal has been required. In Delaware, Virginia, Illinois, Missouri, and Tennessee, the scroll with L. S. has been substituted by statute, and in Pennsylvania by long usage, sanc-

FRANKLIN,
January,
1832.

Beardsley
vs.
Knight.

tioned afterwards by the courts. (5 *Binney*, 238.) But upon the same question coming up in New-York, *Chancellor Kent* very decidedly condemned the use of such a substitute. (5 *John. Rep.* 239, *Warren* vs. *Lynch.*) And he has more lately express his opinion with equal decision in his commentaries. (*Vol.* 4, *p.* 444.) He shows, that the seal was not used "because it helped to designate the' party who affixed it to his name," but was intended to fix the attention of parties more effectually, as well as to serve as the principal means of distinction between writings sealed and writings not sealed.. (5 *Johns.* 246; 4 *Kent's Com.* 445.)

The defendant contends, that the use of a scroll as a substitute for the waxen seal, ought not to be adopted by our courts. Because, 1st. It has no countenance from our statute, which (*p.* 167,) requires that deeds must be signed, sealed, and delivered &c. to be valid. Now if the Legislature had designed to vary the common law, would they have re-enacted the common law essentials of deeds word for word? 2nd. It tends to abolish the important distinctions which have so long obtained between specialties and simple contracts. *Chancellor Kent* considers, that "it is in effect abolishing seals, and, with them, the definition of a deed or specialty, and all distinction between writings sealed, and writings not sealed."—(4 *Kent's Com. p.* 445.) 3rd. Such substitute has been decided insufficient, by the Supreme Court, in the case of *Mattocks* vs. *White*, in Chittenden county, in 1829—not reported. That was an action of covenant broken. The deed was signed, and a scroll with L. S. made in place of a seal. The court, *per* PRENTISS, C. J., decided the deed to be void. And in *Stevens* vs. *Dewing*, (2 *Vt. Rep.* 411) the principle that a seal is essential to the validity of a deed is distinctly recognized; also in *Arms* vs. *Burt et al.* 1 *Vt. Rep.* 309.

The opinion of the Court was delivered by

WILLIAMS, J.—The plaintiff has declared against the defendant in covenant. The declaration contains two counts. The defendant pleads performance, and tenders an issue which is joined. It was considered by the county court that this plea put the plaintiff on proof of evey material fact in his declaration. The plaintiff contends, that, under this issue, his derivative title was not denied, nor the character in which he sued. But if the plea required the plaintiff to shew a breach of the covenant declared on, and this was not questioned, he must, to shew such breach, prove an eviction of some one holding under Hatch; and

FRANKLIN,
January,
1832.

Beardsley
vs.
Knight.

this made it necessary to prove a conveyance from Hatch to himself. The plaintiff does not sue as assignee, nor in the right of another, as an executor, or administrator, or assignee of a bankrupt, in which case his character as assignee would not be denied under the plea. But he sues as on a covenant made with him, and coming to him with the land, by virtue of a deed from Hatch. The eviction of the plaintiff would be no breach of the defendant's covenant with Hatch, unless plaintiff claimed title to the land through Hatch. Hence it was incumbent on the plaintiff to show a conveyance from Hatch, and this brings in question the validity of the instrument which was offered as Hatch's deed to plaintiff. It seems that it was objected to, and excluded as not having been sealed.

It is first contended by the plaintiff that this was a question of fact, which ought to have been submitted to the jury. This will not bear examination for a moment. It would be submitting to the jury to say, whether writing the word seal, does in law constitute the instrument, to which it is affixed, a sealed instrument. The court must always determine whether an instrument offered in evidence has the legal requisites to make it evidence; and although the parties may call a writing, without any seal, a deed, and offer it in evidence as such, yet the court must adjudge that it is *not* a deed. When the court have determined what constitutes a seal, the jury may then say whether it is affixed to the instrument. If the court correctly determined that a seal should be of wax or wafer, it would then be a question of fact for the jury, whether it was placed on the instrument; but if there was no pretence that a wafer or wax, or that which the court considered essential to constitute a seal, had ever been impressed on the paper offered, then it was a question of law for the court to determine whether that paper was a deed. The county court were correct in determining this question, and excluding the paper from the jury, if they were right in determining that it was not sealed. The question then arises, what constitutes a seal, and was the instrument offered sealed? It was incumbent on the plaintiff to show that writing the word "seal" at the end of his name, constituted a seal, especially as it is against the common received opinion. It would be sufficient, to decide the point, to say that no authorities have been or can be produced from the common law of England, or from the decisions of our own courts, establishing this as a seal. The definition of a seal, or sealed instrument, is as well understood as the definition of a written instrument. A learned

and elaborate argument has been made, and reference has been had to legal and classical writers, to shew the origin and use of seals. Possibly there is some dispute as to the origin, and too much consequence may have been attached to them. Perhaps, the whole distinction between sealed instruments and those not under seal, may savour of the learning of former times, and possibly if a system of jurisprudence was now to be formed, the whole distinction might be abolished. But the distinction is so interwoven with every branch of the law, and presents itself to us in so many parts, both of the statute books and the books of the common law, and is so well understood both by the learned and unlearned, by the lawyer and his client, that it would be worse that useless to attempt to abolish it to accommodate a particular case. It is a question which will seldom arise in this state.

Franklin, January, 1832.

Beardsley vs. Knight.

Whether any definition can be given of a seal which would be sufficiently accurate to embrace every case, is unimportant. As to deeds, charters, &c., it has always been understood the seal must be of wax or wafer, something which may be impressed with an instrument used as and for a seal. Corporations act by their seal, and public documents are evidenced by a seal. In these last cases the impression of the seal may be made directly on paper without the intervention of the wafer or wax, as it is the particular impression made by the stamp which is recognised as the public seal of the corporation or public office. Possibly, some other substance may be found which will answer the purpose of a seal, as well as wax or wafer. But merely writing the word *seal* will never be in general use. It can never be adopted either for a common or public seal. The decision of Chief Justice *Kent*, in the case of *Warren* vs. *Lynch*, 5 *John.* 237, and his remarks in the 4th volume of his commentaries, (page 444,) are perfectly conclusive on the question, and are as much distinguished for sound common sense, as for legal learning. Further, we learn that this question has been determined by the Supreme Court of this State in a cause decided in Chittenden County, between *Mattocks* and *White*, which is not reported. In those states where a scroll or flourish of the pen or circle of ink has been adopted, it has been effected either by statute, or by long usage. Such may be the law in those states; but it is not in this state, either by force of the common law or by statute. The instrument, therefore, offered in evidence as the deed of Hatch, was not a deed or conveyance of land, as it wanted one of the essential requisites to constitute it a deed. The paper from Hatch to the plaintiff, having been rightly excluded by

FRANKLIN,
January,
1832.

Beardsley
vs.
Knight.

the court, there is no other ground on which the plaintiff can re-
cover of the defendant on the covenants contained in the defen-
dant's deed to Hatch.    The argument that the plaintiff was in pos-
session, and, therefore, might avail himself of the covenant as run-
ning with the land, is wholly destitute of foundation.    His pos-
session, as against Hatch, may have been adverse, so that he was
acquiring a title by the statute of limitations as against him ; but
if so, it would be, at least, singular, if he could acquire a title as
against Hatch by a trespass, and, at the same  time, by the same
trespass, acquire a right to Hatch's claim against the defendant on
the covenants in his deed.    Although a deed from Hatch to the
plaintiff might under some circumstances be presumed, yet, as pre-
sumptions are made  to quiet men in  possession, I do not know
that it has ever been  contended before, that they would  create a
right of action on the deed  presumed.    A  deed  might  be  pre-
sumed to give a legal origin to a possession ; but an instrument not
under seal cannot be  presumed to be a deed for the  purpose of
giving an action of covenant thereon, or an action of covenant on
a deed farther back in the chain of title.    It seems that the plain-
tiff  had a  quit-claim deed  from the  defendant and  Hyde, da-
ted 8th July, 1807, of one undivided moiety of the land in dispute.
If he was  not in possession under that deed,  he  was in without
title, and can have no claim upon the defendant if he has not kept
his covenant with Hatch, for the other moiety of the  same  pre-
mises.   It is said the evidence on the second count was excluded
by the court.    This count appears to be  decidedly bad ; and al-
though the court may have erred in  excluding the testimony alto-
gether, and the regular course might have been to have admitted
the testimony, leaving the defendant to move in  arrest, or  bring
his writ of error, yet this court would not, on  that account, grant
a new  trial, when we should be  under obligation to arrest the
judgement thereon on account of the insufficiency of the declara-
tion.    But it will be observed, that notwithstanding the pleader in
framing the declaration avoided any distinct reference to the in-
strument which purported to be a deed from Hatch to the plain-
tiff, which was excluded as not being sealed, yet, to avail himself of
the covenant made with Hatch,  and entitle himself to shew the
eviction as a breach of that covenant injurious to him, he declares
that he was possessed of the part of which  he was evicted, as as-
signee of Hatch.    To support this count, therefore, it was neces-
sary for him to  show a legal assignment from Hatch, and if he
failed to introduce a regular  deed from  Hatch  to himself, the

count would fail for want of proof. This count, therefore, as well as the other, depended upon the validity of Hatch's conveyance to the plaintiff; and that being excluded, all other testimony was irrelevant, and was properly rejected. If neither Hatch nor his grantee were evicted from the premises, the plaintiff has not become liable on his covenant to Hatch. If the plaintiff was evicted from his undivided part, he is without remedy at law, as his title to an undivided moiety was nothing more than a quit-claim deed from the defendant and Hyde, on which he has not set up any claim ; and his title to the other moiety was under a writing from Hatch which the Court consider as no legal conveyance. On every view which we have been able to take of the case, we can see no remedy for the plaintiff at law ; and the judgement of the county court must be affirmed.